Harvey HARRISON, Plaintiff and Appellant,

v.

Hazel HARRISON, an incompetent person, and Glen C. Karn, guardian ad litem of Hazel Harrison, incompetent, Defendant and Respondent.

No. 7528.

Supreme Court of North Dakota.

March 29, 1956.

Wm. L. Paulson, Valley City, for plaintiff and appellant.

Bernard C. Lyons, Valley City, for defendant and respondent.

SATHRE, Judge.

The plaintiff, Harvey Harrison brings this action for a divorce against his wife the defendant, Hazel Harrison, on the grounds of extreme cruelty and desertion. Judgment is demanded for a divorce and for the care and custody of their minor children. The defendant answered by counterclaim and cross complaint alleging extreme cruelty, and demanded judgment for a decree of divorce, but made no claim as to the care and custody of the minor children. At the trial, however, defendant withdrew her answer and cross complaint.

The plaintiff and defendant were married on the 4th day of December 1929 at Fargo,

North Dakota. Since their marriage they have lived in the county of Barnes and State of North Dakota until the defendant was committed to the State Hospital for the Insane at Jamestown, North Dakota on March 19, 1951.

There were born to the plaintiff and defendant as the issue of said marriage, four children, Edward E. Harrison, born September 21, 1931, Eileen E. Harrison, born July 4, 1937, Harvey R. Harrison, born January 2, 1940 and Bruce G. Harrison, born May 13, 1942.

Judgment was rendered granting plaintiff a divorce and making a property division. The plaintiff appealed from the judgment, and from an order denying his motion for a modification of the property division.

It was established by the evidence that during the past five years the defendant would falsely accuse the plaintiff of associating with other women, without her knowledge and consent, and that he had been unfaithful to the defendant as his wife. The complaint further alleges that on the 10th day of January, 1945, the defendant wilfully and without cause deserted and abandoned plaintiff and separated herself from him and withdrew from the marriage bed and ever since that time has persistently refused to have reasonable or any matrimonial intercourse with the plaintiff and has never since at any time cohabited with the plaintiff. That such refusal on the part of the defendant to cohabit with the plaintiff was without cause and without the consent of the plaintiff and at no time during said separation did either health or physical condition of either of the parties make necessary such refusal to have matrimonial intercourse. This evidence was not contested by the defendant.

The defendant was paroled from the hospital in October 1953, and ever since has been at liberty and has made her home with her parents in Barnes County. At the trial of the action she was represented by Glen C. Karn her guardian ad litem. He had also been appointed general guardian of her person and estate by the county court of Barnes County, North Dakota. The trial court found that the plaintiff had established the allegations of the complaint by abundant evidence and that he was entitled to a divorce from the defendant. The care and custody of the minor children were also awarded to the plaintiff.

The fact that the defendant was mentally incompetent was not pleaded as a defense. However the record discloses that she was a parolee of a mental institution at the time of the trial. The question arises therefore whether or not a valid judgment of divorce may be entered against a person who is mentally incompetent at the time of the trial.

■ It is well settled that courts are under a duty to protect the rights and interests of insane litigants. In 44 C.J.S., Insane Persons, § 133, page 290 it is stated:

"It is the policy of both the legislatures and the courts to confer ample protection to the rights and interests of insane litigants. The courts ordinarily have inherent power and are in duty bound to do so, although no committee or guardian has been appointed, or, if appointed, whether or not the committee or guardian has proceeded wisely. In the absence of a statute regulating the exercise of the power, it becomes the duty of the court to determine the mode or manner in which the power can best be exercised to effect the end desired. It has been held that the discretion in this regard is to be directed rather to the situation developed by the proceeding itself after the court has taken cognizance of the merits than to a determination in limine of the rights involved and without knowledge of the merits. Where the statute provides the manner in which such rights shall be protected, it must be complied with and followed."

In the case of Metcalf v. Metcalf, 301 Ky. 817, 193 S.W.2d 446, it was held that the courts have inherent power and are in

duty bound to protect the rights and interests of insane or incompetent litigants, since the law is designed to protect the weak.

 The defendant was committed to the mental hospital March 19, 1951. She deserted the plaintiff on January 10, 1945, six years prior to her commitment to the hospital. The statutory period of one year necessary to establish desertion was completed more than five years prior to the time that she was committed to the hospital. There is no evidence in the record as to when she actually became mentally incompetent; however it is not probable that her mental condition was of an aggravated character. She was paroled a little more than two years after commitment. Since the date of her parol she has been at liberty and has made her home with her parents. There is no evidence of any abnormal conduct since her parole. We think therefore that it is a legitimate presumption that her determination to desert the plaintiff in January 1945 was a voluntary act committed while her mental faculties functioned normally, and that she was mentally competent during the statutory time required to constitute desertion.

In 17 Am.Jur., Divorce and Separation, Sec. 226, page 265, it is stated:

"In this country it is a well-established rule that a proceeding for divorce may be instituted against an insane spouse for a cause of divorce accruing while he or she was sane. His or her subsequent insanity is not, under modern laws, regarded as a bar to such proceedings, the conflict on this point being practically confined to a few early English cases which were later either reversed or overruled. An action for divorce should not, however, be tried against one whose reason has been dethroned and who is thus rendered incapable of making answer to a charge or aiding counsel in the conduct of his or her defense, until at least a reasonable time is allowed for recovery and restoration of capacity.

The usual practice in a suit involving an insane person, as in other cases of actions against such persons for whom a committee or guardian has not been appointed, is to appoint a guardian ad litem to appear and answer for the insane defendant."

In the case of Jordan v. Jordan, Tex.Civ. App., 257 S.W. 569, it was held that an action for divorce may be maintained against an insane defendant, represented by a guardian ad litem, where the acts constituting the ground for divorce were committed by such defendant prior to becoming insane.

To the same effect see Gaines v. Gaines, Tex.Civ.App., 234 S.W.2d 250, decided in 1950.

In the case of Wright v. Wright, 125 Va. 526, 99 S.E. 515, 4 A.L.R. 1331, it was held that if desertion continues for the statutory period before the insanity of the defendant intervenes, then the cause of action for divorce on the ground of desertion is complete, and the subsequent insanity of the defendant will not be a defense to the action for divorce on the ground of desertion.

We think therefore that upon the record before us it is a legitimate presumption that defendant's determination to desert the plaintiff in January 1945 was a voluntary act committed while her mental faculties functioned normally, and that she was mentally competent during the statutory time required to constitute desertion.

At the time of the trial the plaintiff was the owner of the following described real property situated in the County of Barnes and State of North Dakota, to-wit:

The Southwest quarter (SW¼) of Section Five (5); the Northeast quarter (NE¼) of Section Eight (8); Southeast quarter (SE¼) of Section Five (5); East half (E½) of the Southwest quarter (SW¼) of Section Four (4); and the Southwest quarter (SW¼) of the Southwest quarter (SW¼) of Section Four (4) all in Township One Hundred Forty North

(140), Range Sixty One (61) West, Barnes County, North Dakota. All of the land is free from incumbrance.

The farm buildings situated on the land were a two-story dwelling house, a granary, and a machine shed. The plaintiff was also the owner of a fairly complete set of farm machinery. Other personal property owned by the plaintiff consisted of several head of livestock. None of the property, either real or personal was incumbered. He owed his bank $400 on a plain note and he owed Barnes County approximately $900 the cost of maintaining his wife at the hospital at Jamestown, North Dakota.

The trial court made a property division and settlement between the parties as follows:

The plaintiff is required to transfer to the defendant or to her guardianship estate the Southwest quarter (SW¼) of Section Five (5) Township One Hundred Forty (140) Range Sixty-one (61) Barnes County, North Dakota. The plaintiff shall deliver to the defendant one paid up life insurance policy in which plaintiff is named as insured, issued by Northwestern Life Insurance Company; one paid up life insurance policy issued by the Provident Life Insurance Company in which the defendant is named as the insured, also one diamond ring. The settlement further provided that the plaintiff pay the defendant, or her attorney, the sum of $100 as attorney's fees in addition to the fees already paid, together with the actual disbursements of the defendant in this action; and that the plaintiff shall pay to the defendant as permanent alimony including medical care and expense the sum of $60 a month commencing August 10, 1954 and continuing on the 10th day of each and every month until further order of the court.

The court found further that the plaintiff was entitled to all of the household goods of any kind, nature or description and now situated on the homestead, excepting the defendants personal effects; all farm machinery and other personal property of any kind, nature and description; the motor vehicle now in the name of the plaintiff; the following real estate now in the name of the plaintiff and which property is situated in Barnes County, North Dakota, and described as follows, to-wit:

The Northeast quarter (NE¼) of Section Eight (8) Southeast quarter (SE¼) of Section Five (5); East half (E½) of the Southwest quarter (SW¼) of Section Four (4); and the Southwest quarter (SW¼) of the Southwest quarter (SW¼) of Section Four (4) all in Township One Hundred Forty North (140), Range Sixty One (61) West, Barnes County, North Dakota, and to the exclusion of any interest therein of the defendant in said premises by reason of marital relationship of the parties.

Judgment was entered accordingly.

The plaintiff made a motion for an order modifying the judgment as to the property division as follows:

That the plaintiff be required to pay the defendant the lump sum of $10,000 in settlement of all permanent alimony. Such payment to include all medical care and expenses; and that the provision of said judgment for the payment of permanent alimony in the sum of $60 per month to be eliminated. Plaintiff's motion for amendment of the judgment was denied and the plaintiff appealed, and demanded a trial de novo.

The hearing was had upon the plaintiff's motion before the trial court on September 30, 1954 at Fargo, North Dakota. At this hearing the plaintiff contended that he had no income for the year 1954 other than the proceeds of his crop from the said described property and that he must pay the 1954 real estate taxes in the approximate sum of $400. That the livestock consists of two grade Herford cows and one spring calf. That the custody and control of the three minor children awarded him under the judgment of the court would involve considerable expense for clothing, maintenance, education and other items and that

in order to pay such expenses he needed all of the real estate owned by him. That in order to be able to secure the sum of $10,000 to pay the defendant it would be necessary for him to have all of the land owned including the said quarter section of land awarded the defendant. That if the said one hundred sixty acres of land is transferred to the defendant it will proportionately decrease his farm income, leaving him only 440 acres, and that the income thereof will not be sufficient to pay his farming expenses, the care, maintenance and education of the minor children and other expenses in addition to the $60 a month alimony allowed the defendant. He contends further that if the defendant is awarded the $10,000 in one lump sum which will be in addition to the two paid up insurance policies awarded the defendant, one policy in the sum of $1,000 and one policy in the sum of $2000, the defendant will be in much better financial condition than she would be if she were awarded the quarter section of land referred to plus the $60 per month alimony. The motion was denied and the plaintiff appealed.

It is established that all property real and personal is unencumbered. The only indebtedness which the defendant has according to his own testimony is $400 owing to his bank and approximately $900 owing to the County of Barnes for the expense of maintaining defendant at the hospital at Jamestown. The plaintiff is probably in a better financial condition as owner of 440 acres of land unencumbered, than as owner of 600 acres encumbered to the extent of $10,000 drawing interest at the rate of 5%.

We have carefully considered all of the evidence adduced at the trial and at the hearing on the motion for amendment of the judgment as to the property division and we conclude that the same is fair and equitable to both parties. The district court still has jurisdiction in the matter of property adjustment, and if in the future changes occur in the financial situation of the parties, the court may, on proper showing, make such adjustment as may be proper in the circumstances.

The judgment and the order denying the motion for amendment of the property division are affirmed.

BURKE, C. J., and JOHNSON, GRIMSON and MORRIS, JJ., concur.